## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER SERI individually and on behalf of all others similarly situated, | **CASE NO.** |
| Plaintiffs, | **JUDGE** |
| v. | **CLASS ACTION COMPLAINT** |
| CROSSCOUNTRY MORTGAGE, INC., an Ohio Corporation, c/o its Statutory Agent DAVID L. FIRESTINE 405 Rothrock Road, Suite 103 Akron, OH 44321-3125 | **JURY TRIAL DEMANDED** |
| and | |
| MICHAEL CRAWFORD d/b/a DIRECT SOURCE, 300 Princeton Dr. Suite 10 Princeton, TX 75407 | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiff Christopher Seri ("Plaintiff" or "Seri") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendants CrossCountry Mortgage, Inc. ("CrossCountry Mortgage") and Michael Crawford d/b/a Direct Source ("Direct Source") to stop their practice of making unsolicited telemarketing calls to the phones of consumers nationwide and to obtain redress for all persons injured by their conduct. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE ACTION

1.      Defendant CrossCountry Mortgage, Inc. is a full service mortgage lender.

2.      CrossCountry Mortgage offers a variety of home purchase, refinance, and home equity products, and is licensed as a mortgage lender in 49 states.

3.      Direct Source is a fictitious name registered in Missouri to Defendant Michael Crawford.  Direct Source operates as a Texas-based telemarketer that performs live outbound lead qualification for mortgage companies and others.

4.      Unfortunately for consumers, Defendants CrossCountry Mortgage and Direct Source cast their marketing net too wide. That is, in an attempt to generate leads for their various campaigns, Defendants CrossCountry Mortgage and Direct Source conducted (and continue to conduct) a wide scale telemarketing campaign that features the making of repeated unsolicited calls to consumers' telephones—including cellular telephones and numbers that appear on the National Do Not Call Registry—without consent, all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA").

5.      By making the telephone calls at issue in this Complaint, Defendants caused Plaintiff and the members of the Classes actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the receipt of such calls, in addition to a loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such calls. Furthermore, the calls interfered with Plaintiff's and the other Class members' use and enjoyment of their cellphones, including the related data, software, and hardware components. Defendants also caused substantial injury to their phones by causing wear and tear on their property, consuming battery life, and appropriating cellular minutes.

6.      The TCPA was enacted to protect consumers from unsolicited telephone calls like

2

those alleged in this case. In response to Defendants' unlawful conduct, Plaintiff files the instant

lawsuit and seeks an injunction requiring Defendants to cease all unsolicited telephone calling

activities to consumers as complained of herein and an award of statutory damages to the

members of the Class under the TCPA, together with costs and reasonable attorneys' fees.

## PARTIES

7.     Plaintiff Christopher Seri is a natural person and citizen of the State of California.

8.     Defendant CrossCountry Mortgage is a corporation organized and existing under

the laws of the State of Ohio with its headquarters located at 6850 Miller Road, Brecksville,

Ohio 44141. Defendant CrossCountry Mortgage conducts business throughout this District, the

State of Ohio, and the United States.

9.     Defendant Michael Crawford ("Crawford") is a natural person and citizen of the

State of Missouri.  Crawford is the owner of Direct Source, a fictitious name registered with the

Missouri Secretary of State.  Direct Source maintains its headquarters at 300 Princeton Dr. Suite

10 Princeton, Texas 75407. Direct Source conducts business throughout this District, the State of

Ohio, and the United States.

## JURISDICTION AND VENUE

10.     This Court has federal question subject matter jurisdiction under 28 U.S.C. §

1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*,

which is a federal statute. Furthermore, jurisdiction is proper under the Class Action Fairness

Act, 28 U.S.C. § 1332(d) *et seq.* because the classes each consist of over 100 people, at least one

member of each class is from a State other than Ohio (the state of Defendant), and the amount in

controversy exceeds $5,000,000. Further, none of the exceptions to CAFA jurisdiction apply.

11.     The Court has personal jurisdiction over Defendants because they solicit

significant consumer business in this District and the unlawful conduct alleged in this Complaint occurred in, was directed to, or emanated from this District.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants solicit a significant amount of consumer business within this District and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District. Venue is additionally proper because Defendant CrossCountry Mortgage resides in this District.

## COMMON FACTUAL ALLEGATIONS

13. Defendant CrossCountry Mortgage is a full service mortgage lender, licensed in 49 states, with a network of branch offices across the United States.

14. Defendant CrossCountry Mortgage regularly utilizes the services of third-party telemarketers and lead generation services.

15. Specifically, CrossCountry Mortgage has an extensive relationship with Direct Source, a Texas-based telemarketer.

16. The relationship between CrossCountry Mortgage and Direct Source is so extensive that Direct Source has a website that is configured such that it specifically allows their telemarketers to easily enter leads and direct those leads to specific CrossCountry Mortgage loan officers.[1] The landing page for that website is reproduced below:

---

[1] http://dsource1.com/ccleads.php

4



17.     The landing page allows the Direct Source telemarketers to select a CrossCountry Mortgage loan officer from a series of pull down menus:



18.     A review of a sampling of the CrossCountry Mortgage loan officers listed on the Direct Source website reveals that they are in fact current CrossCountry Mortgage employees.[2]

---

[2] *See e.g.*,
Ryan Boyd - http://www.ccmmortgages.com/EmployeeDetail.aspx?EmployeeID=68289&;

19.     Unfortunately for consumers, Defendants utilized (and continue to utilize) a sophisticated telephone dialing system to call cellular telephone users *en masse* for the purpose of promoting its services, often times calling consumers on their cellular phones.

20.     Both CrossCountry Mortgage and Direct Source have advertised telemarketing positions.[3]

21.     In Defendants' overzealous marketing attempts, they placed (and continue to place) phone calls to consumers that never provided consent to be called and to consumers' cellphones with whom they had no prior dealings or relationship. Worse yet, Defendants placed (and continue to place) repeated and unwanted calls to consumers whose phone numbers are listed on the National Do Not Call Registry. Consumers place their phone numbers on the Do Not Call Registry for the express purpose of avoiding unwanted telemarketing calls like those alleged here.

22.     Direct Source seeks to generate leads for businesses that have contracted with it to receive its leads, including mortgage companies such as Defendant CrossCountry Mortgage. However, CrossCountry Mortgage and Direct Source have failed to appropriately segment their call lists between landline and cell phone numbers and, as a result, they have made unsolicited calls to cell phone numbers with their automatic telephone dialing system ("ATDS"), which is expressly prohibited by the TCPA.

---

David Gooding - http://www.ccmmortgages.com/EmployeeDetail.aspx?EmployeeID=55675&;
Jamie Fiore -  http://mortgage2004.ccmbranches.com/contact-us/;
Federico Baldo - https://www.linkedin.com/in/federico-baldo-4067a961;
Jim Matyas - http://www.myccmloan.com/EmployeeDetail.aspx?EmployeeID=64806&

[3] *See e.g.* https://crosscountrymortgage.com/about-us/careers/apply/?p=job%2Fob762fwa (specifically noting that CrossCountry Mortgage offers employees "In-bound premium leads from the top sources in the nation";
https://advertising.thecreativeloft.com/advertising/jobs/telemarketers-start-asap-princeton;

23.     CrossCountry Mortgage and Direct Source use a variety of local phone numbers to make these unlawful sales calls to consumers.

24.     One such phone number 512-999-7211 (one of the many phone numbers Plaintiff was called by) has pages of complaints on multiple websites:

- called to tell me about options that have opened up on my mortgage ..  not interested.. leave me alone [4]
- Frequent caller, wants to provide mortgage money, refinance mortgages. Need neither, all times caller is abrupt in the hangup.[5]
- called about mortgage. daily for past two months. number changes.[6]
- yes, it does change. I blocked them after the 3rd call when I had already asked them to stop. Then they continue to call and it is a different number each time. No matter how many I block, they always call on a different one[7]
- This company is Direct Source. They have called here 9 times this past month. I have reported them EIGHT times to the Pennsylvania "DO NOT CALL LIST". Each time I try, I get a recorded message saying "Please enter an existing phone number". The first 3 times someone I answered the person on the other end got REAL nasty and demanding that I GIVE them my mortgage information. Sorry but no way will I EVER give in to a BULLY and that's what each one of those ignorant people are.....FREAKING BULLIES!.[8]
- Always calling to refinance my mortgage.  Not interested.  I have asked them a dozen times to take me off of their list as well as reported them to the Do Not Call registry.  No use.  They keep calling. [9]
- telling me that this number is the one registered with a loan or mortgage?!? Come on, now.... I've had this number for almost 20 years. Oh and guess what number is on the Do not call list?!?[10]
- I've told them a number of times we do not pay a mortgage and take our number off their list. He and she said they would....LIARS. [11]

25.     In making the phone calls at issue in this Complaint, Defendants and/or their agent utilized an ATDS under the TCPA. Specifically, the hardware and software used by

---

[4] http://800notes.com/Phone.aspx/1-512-999-7211
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*

Defendants (or their agent) has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Defendants' automated dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous calls simultaneously (all without human intervention).

26.     Defendants knowingly made (and continue to make) telemarketing calls without the prior express consent of the call recipients and knowingly continues to call such consumers after requests to stop. As such, Defendants not only invaded the personal privacy of Plaintiff and members of the putative Class, but also intentionally and repeatedly violated the TCPA.

## FACTS SPECIFIC TO PLAINTIFF SERI

27.     On June 29, 2006, Plaintiff Seri registered his cellular phone number on the National Do Not Call Registry to avoid receiving unsolicited telemarketing calls on his cellular phone.

28.     Starting in or around November 2015, Plaintiff Seri began receiving calls from Direct Source and/or CrossCountry Mortgage on his cellular telephone from a variety of phone numbers associated with Defendants, including 510-730-3142, 247-632-1471, 209-271-4442, 512-999-7211, and 916-634-0107.

29.     Over the course of the next six months, Defendants called Plaintiff at least twenty (20) times.

30.     Plaintiff heard a noticeable delay before being connected to an operator when Defendants made unsolicited telemarketing calls to his cellular phone.

31.     Plaintiff Seri has repeatedly informed the Defendants: (1) that he was not interested in Defendants' products or services, that (2) that he had never given Defendants

8

permission to call him, and (3) that Defendants were not to call him again.

32.    On information and belief, Defendants' telemarketers were calling him in an attempt to pitch him a mortgage loan.

33.    The calls were a nuisance to Plaintiff and invaded his privacy.

34.    Plaintiff does not have a relationship with Defendants, has never provided his telephone number directly to Defendants, and never requested that Defendants place calls to him or offer him its services. Simply put, Plaintiff has never provided any form of prior express written consent to Defendants to place calls to him and has no business relationship with Defendant.

35.    Defendants are and were aware that the above-described telephone calls were and are being made to consumers like Plaintiff who had not consented to receive them and whose telephone numbers were registered with the National Do Not Call Registry.

## CLASS ALLEGATIONS

36.    **Class Allegations**: Plaintiff Seri brings this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of himself and the four classes defined as follows:

**Autodialed No Consent Class**: All persons in the United States who from May 19, 2012 to the present: (1) CrossCountry Mortgage and/or Direct Source called; (2) on the person's cellular telephone number; (3) for whom Defendants claim they obtained prior express consent in the same manner as Defendants claims they obtained prior express consent to call the Plaintiff.

**Autodialed Do Not Call Class**: All persons in the United States who from May 19, 2012 to the present: (1) CrossCountry Mortgage and/or Direct Source called, (2) on the person's cellular telephone, (3) for the purpose of selling CrossCountry Mortgage and/or Direct Source's products and services, (4) after the person informed CrossCountry Mortgage and/or Direct Source that s/he no longer wished to receive calls from CrossCountry Mortgage and/or Direct Source.

**Do Not Call Registry Class**: All persons in the United States who from May 19,

2012 to the present (1) CrossCountry Mortgage and/or Direct Source called more than one time on his/her cellphone; (2) within any 12-month period, (3) where the cellphone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of soliciting products or services; and (5) for whom Defendants claim they obtained prior express consent in the same manner as Defendants claim they obtained prior express consent to call the Plaintiff.

**Do Not Call Revocation Class**: All persons in the United States who from May 19, 2012 to the present (1) CrossCountry Mortgage and/or Direct Source called, (2) on the person's telephone number, (3) where the telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for the purpose of selling CrossCountry Mortgage and/or Direct Source's products and services (5) at least thirty (30) days after the person informed CrossCountry Mortgage and/or Direct Source that s/he no longer wished to receive calls from CrossContry Mortgage and/or Direct Source.

The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons. Plaintiffs anticipate the need to amend the class definitions following discovery related to such issues.

37. **Numerosity**: The exact sizes of each of the Classes are unknown and are not available to Plaintiffs at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendants made telephone calls to thousands of consumers who fall into the definitions of the Classes. Members of the Classes can be easily identified through Defendants' records.

38. **Commonality and Predominance**: There are many questions of law and fact

common to the claims of the Plaintiffs and the Classes, and those questions are central to the case and predominate over any questions that Defendants may claim affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

> (a)     Whether Defendants' conduct violated the TCPA;
>
> (b)     Whether Defendants systematically made telephone calls to individuals who did not previously provide Defendants and/or their agents with their prior express consent to receive such phone calls;
>
> (c)     Whether Defendants made the calls with the use of an ATDS;
>
> (d)     Whether Defendants systematically made telephone calls to consumers whose telephone numbers were registered with the National Do Not Call Registry;
>
> (e)     Whether Defendants called people who asked not to be called, and
>
> (f)     Whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

39.     **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Classes. Plaintiff and the Classes sustained damages as a result of Defendants' uniform wrongful conduct during transactions with Plaintiff and the Classes.

40.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and he has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Classes, and Defendants have no defenses unique to Plaintiff.

41.     **Policies Generally Applicable to the Classes**: This class action is appropriate for

11

certification because Defendants have acted or refused to act on grounds generally applicable to the Classes as respective wholes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Classes under Rule 23(b)(2). Defendants' practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Classes as respective wholes, not on facts or law applicable only to Plaintiff.

42.     **Superiority and Manageability**: This case is also appropriate for class certification under Rule 23(b)(3) because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendants' misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

## FIRST CAUSE OF ACTION
### Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*
### (On behalf of the Plaintiff and the Autodialed No Consent Class)

43.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

44.     Defendants made unsolicited and unwanted telemarketing calls to telephone numbers belonging to the Plaintiff and the other members of the Autodialed No Consent Class— without their prior express written consent—in an effort to sell their products and services.

45.     Defendants made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*. Defendants utilized equipment that made the telephone calls to the Plaintiff and other members of the Autodialed No Consent Class simultaneously and without human intervention.  Such equipment is an ATDS under the TCPA.

46.     By making unsolicited telephone calls to Plaintiff and members of the Autodialed No Consent Class's cellular telephones without prior express consent, and by utilizing an ATDS, Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii).

47.     As a result of Defendants' unlawful conduct, Plaintiff and the members of the Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular phones and a reduction in their allotment of minutes and, under Section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

48.     Should the Court determine that Defendants' conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by the Plaintiff and the other members of the Class.

## SECOND CAUSE OF ACTION
### Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*
### (On behalf of Plaintiff and the Autodialed Do Not Call Class)

49.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

50.     Defendants made unsolicited and unwanted telemarketing calls to telephone numbers belonging to Plaintiff and the other members of the Autodialed Do Not Call Class on their cellular telephones in an effort to sell their products and services after the person had informed Direct Source and CrossCountry Mortgage that s/he no longer wished to receive such calls from Direct Source or CrossCountry Mortgage.

51.     Defendants made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*. Defendants utilized equipment that made the telephone calls to Plaintiff and other members of the Class simultaneously and without human intervention. Such equipment qualifies as an ATDS under the TCPA.

52.     By making unsolicited telephone calls to Plaintiff and members of the Class's cellular telephones after they requested to no longer receive calls, Direct Source and CrossCountry Mortgage violated 47 U.S.C. § 227(b)(1)(A)(iii) by continuing to call such consumers without prior express consent.

53.     As a result of Defendants' unlawful conduct, Plaintiff and the members of the Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular phones and, under Section 227(b)(3)(B), are each entitled to, inter alia, a minimum of $500 in damages for each such violation of the TCPA.

54.     Should the Court determine that Defendants' conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages

14

recoverable by Plaintiff and the other members of the Autodialed Do Not Call Class.

**THIRD CAUSE OF ACTION**
**Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.***
**(On behalf of the Plaintiff and Do Not Call Registry Class)**

55.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

56.     47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

57.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

58.     47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

59.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or

15

entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

60.    Defendants violated § 64.1200(c) by initiating, or causing to be initiated,

telephone solicitations to wireless telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls from Defendants, as set forth in § 64.1200(d)(3).

61.     Defendants made more than one unsolicited telephone call to Plaintiff and members of the Do Not Call Registry Class within a 12-month period without their prior express consent to receive such calls. Plaintiff and members of the Do Not Call Registry Class never provided any form of consent to receive telephone calls from Defendants, and/or Defendants do not have a current record of consent to place telemarketing calls to them.

62.     Defendants violated § 64.1200(d) by initiating calls for telemarketing purposes to wireless telephone subscribers, such as the Plaintiff and the Do Not Call Registry Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them. Defendants have no written policies, available on demand, related to the receipt and honoring of do not call requests. Further, Defendants have not trained their personnel involved in telemarketing in the existence and use of any such do not call list.

63.     Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendants in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendants' conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of § 64.1200.

17

64.     To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**FOURTH CAUSE OF ACTION**
**Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.***
**(On behalf of Plaintiff and the Do Not Call Revocation Class)**

65.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

66.     Plaintiffs and members of the Do Not Call Revocation Class expressly requested that Defendants no longer place calls to them, after which Defendants failed to place Plaintiffs and members of the Do Not Call Revocation Class on Defendants' internal do-not-call list (or failed to do so within a reasonable time period).

67.     More than thirty days following Plaintiff's and the members of the Do Not Call Revocation Class's express requests to not receive calls from Defendants, Defendants placed additional calls to them without their consent and in contradiction of their requests not to be called.

68.     Defendants violated § 64.1200 (d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff and the Do Not Call Revocation Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

69.     Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Revocation Class received more than one telephone call within a 12-month period made by or on behalf of the Defendants in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendants' conduct as alleged herein, Plaintiff and the Do Not Call Revocation Class suffered actual damages, an invasion of their privacy, and, under section 47 U.S.C. § 227(c), are each

entitled to, *inter alia*, up to $500 in damages for such violations of § 64.1200.

70.     As a result of Defendants' conduct as alleged herein, Plaintiff and the Do Not Call Revocation Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, inter alia, to receive up to $500 in damages for such violations of § 64.1200.

71.     To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Revocation Class.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Christopher Seri, individually and on behalf of the Classes, prays for the following relief:

1.     An order certifying the Classes as defined above, appointing Plaintiff Christopher Seri as the representative of the Classes, and appointing his counsel as Class Counsel;

2.     An award of actual and statutory damages;

3.     An injunction requiring Defendants and their agents to cease all unsolicited telephone calling activities, a declaration that Defendants used an ATDS and that they failed to obtain prior express consent, and otherwise protecting the interests of the Classes;

4.     An award of reasonable attorneys' fees and costs; and

5.     Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiffs request a trial by jury of all claims that can be so tried.

Respectfully Submitted,

s/ Basil W. Mangano

Basil W. Mangano (0066827)
2245 Warrensville Center Road, Suite 213
Cleveland, Ohio 44118
Phone: 216.397.5844
Fax: 216.397.5845
Email: bmangano@bmanganolaw.com

Steven L. Woodrow
(swoodrow@woodrowpeluso.com)*
Patrick H. Peluso
(ppeluso@woodrowpeluso.com)*
Woodrow & Peluso, LLC
3900 East Mexico Avenue
Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Stefan Coleman *
Law Offices of Stefan Coleman, P.A.
201 S. Biscayne Blvd., 28th Floor
Miami, Florida 33131
Phone: 877-333-9427
Email: law@stefancoleman.com

*pro hac vice application to be filed

Counsel for Plaintiff and the Putative Class