# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER SERI, individually and on behalf of all others similarly situated, | ) ) | |
| Plaintiff, | ) ) | Case No. 1:16-CV-01214-DAP |
| v. | ) ) | |
| CROSSCOUNTRY MORTGAGE, INC. and MICHAEL CRAWFORD d/b/a DIRECT SOURCE, | ) ) ) ) | JUDGE DAN AARON POLSTER <br><br> ORAL ARGUMENT REQUESTED |
| Defendants. | ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CROSSCOUNTRY MORTGAGE, INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Michael A. Platt
(Ohio Bar Registration No. 0082926)
E-mail:  maplatt@jonesday.com
Kristin S.M. Morrison
(Ohio Bar Registration No. 0085004)
E-mail:  kmorrison@jonesday.com
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
Telephone:     (216) 586-3939
Facsimile:     (216) 579-0212

David L. Firestine
(Ohio Bar Registration No. 0072621)
E-mail:  dlf@witscheylaw.com
WITSCHEY WITSCHEY & FIRESTINE
   CO., LPA
405 Rothrock Road, Suite 103
Akron, Ohio 44321-3125
Telephone:     (330) 665-5117
Facsimile:     (330) 665-7615

*Attorneys for Defendant*
*CrossCountry Mortgage, Inc.*

Dated:  June 28, 2016

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................ 1

THE COMPLAINT ............................................................................................ 2

OVERVIEW OF THE TCPA ............................................................................. 3

ARGUMENT ...................................................................................................... 5

    I.    The Complaint Should be Dismissed for Failing to Plead Any
        Facts Sufficient to  State a Claim for Direct or Vicarious
        Liability Against CrossCountry Under the TCPA ................................. 6

           A.    The Complaint's Group Pleading Is Insufficient to
               Allege Any Direct Liability Against CrossCountry For
               Violation of the TCPA ............................................................ 6

           B.    The Complaint Fails to Allege that CrossCountry is
               Vicariously Liable for Any Alleged TCPA Violation
               by Direct Source Or Anyone Else ......................................... 10

    II.    By Simply "Parroting" the Statutory Language of the TCPA,
        the Complaint Fails to Allege Facts Sufficient to Plead Any
        Violation of the TCPA ........................................................................ 12

CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

CASES

*Aaron v. Durrani*, No. 1:13-CV-202,
2014 WL 996471 (S.D. Ohio Mar. 13, 2014) .......................................................... 6

*Aikens v. Synchrony Fin.*, No. 15-10058,
2015 WL 5818911 (E.D. Mich. July 31, 2015),
*report and recommendation adopted*,
2015 WL 5818860 (E.D. Mich. Aug. 31, 2015) ........................................... 13, 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................... 5, 13

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................................... 5, 13

*Charvat v. EchoStar Satellite, LLC*,
630 F.3d 459 (6th Cir. 2010) ......................................................................... 7, 10

*Cunningham v. Kondaur Capital*, No. 3:14-1574,
2014 WL 8335868 (M.D. Tenn. Nov. 19, 2014),
*report and recommendation approved*,
2015 WL 1412737 (M.D. Tenn. Mar. 26, 2015) ................................................. 11

*Eberhard Architects, LLC v. Bogart Architecture, Inc.*, No. 1:14 CV 1185,
2014 WL 4354561 (N.D. Ohio Aug. 29, 2014) ..................................................... 6

*Hurtwitz v. Pinnacle Fin. Group, Inc.*, No. 14-10040,
2014 WL 2479999 (E.D. Mich. June 3, 2014) .................................................... 13

*In re Dish Network, LLC*,
28 FCC Rcd. 6574, 2013 WL 1934349 (F.C.C. May 9, 2013) ..................... 6, 7, 10

*Jackson v. Caribbean Cruise Line, Inc.*,
88 F. Supp. 3d 129 (E.D.N.Y. 2015) .................................................................. 11

*MacDermid v. Discover Fin. Servs.*,
488 F.3d 721 (6th Cir. 2007) .............................................................................. 5

## TABLE OF AUTHORITIES

(Continued)

Page(s)

*Mashiri v. Ocwen Loan Serv., LLC*, No. 3:12-cv-02838-L-MDD,
2013 WL 5797584 (S.D. Cal. Oct. 28, 2013) ........................................................... 7

*Murray v. Choice Energy, LLC*, No. 1:15-cv-60,
2015 WL 4204398 (S.D. Ohio July 10, 2015) ........................................................ 9, 11, 13

*Norman v. N. Illinois Gas Co.*, No. 13 CV 3465,
2013 WL 5746329 (N.D. Ill. Oct. 23, 2013) ........................................................... 15

*Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*, No. 12 Civ. 2837,
2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012) ........................................................... 5, 6

*Patton v. Corinthian Colls., Inc.*, No. 13-14814,
2014 WL 1118467 (E.D. Mich. Mar. 20, 2014) ..................................................... 6, 7

*Pugliese v. Prof'l Recovery Serv., Inc.*, No. 09-12262,
2010 WL 2632562 (E.D. Mich. June 29, 2010) ..................................................... 4

*Reo v. Caribbean Cruise Line, Inc.*, No. 1:14-cv-1374-DJN,
2016 WL 1109042 (N.D. Ohio Mar. 18, 2016) ..................................... 1, 4, 5, 11, 12, 13, 14

*Selou v. Integrity Sol. Servs., Inc.*, No. 15-10927,
2016 WL 612756 (E.D. Mich. Feb. 16, 2016) ....................................................... 6, 13

*Smith v. State Farm Mut. Auto. Ins. Co.*,
30 F. Supp. 3d 765 (N.D. Ill. 2014) ..................................................................... 6

*Starkey v. JPMorgan Chase Bank, N.A.*,
573 F. App'x 444 (6th Cir. 2014) ....................................................................... 15

*Thomas v. Taco Bell Corp.*,
879 F. Supp. 2d 1079 (C.D. Cal. 2012),
*aff'd*, 582 F. App'x 678 (9th Cir. 2014) ............................................................... 7

*Wagner v. CLC Resorts & Developments, Inc.*,
32 F. Supp. 3d 1193 (M.D. Fla. 2014) ................................................................. 4

*Wallack v. Mercantile Adjustments Bureau, Inc.*, No. 14-10387,
2014 WL 1515852 (E.D. Mich. Apr. 18, 2014) ..................................................... 13

# TABLE OF AUTHORITIES

(Continued)

Page(s)

*Zehala v. Am. Express*, No. 2:10-cv-848,
2011 WL 4484297 (S.D. Ohio Sept. 26, 2011) .................................................................. 4

**STATUTES AND REGULATIONS**

47 U.S.C. § 227 ............................................................................................ 1, 2, 3, 4, 14, 15

47 C.F.R. § 64.1200 .......................................................................................... 4, 10, 15

**RULES**

Fed. R. Civ. P. 8 ................................................................................................... 5, 6

Fed. R. Civ. P. 12 ............................................................................................. 2, 5, 6

## INTRODUCTION

This putative class action is premised on alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (the "TCPA"), by telemarketers who allegedly called plaintiff Christopher Seri on his cellular telephone.  Plaintiff asserts that the telemarketers called him at least twenty times between November 2015 and May 19, 2016, and that these calls were in violation of the TCPA because his cellular number is listed on the National Do Not Call Registry, he did not give prior express consent to be called, and he told the callers that he did not want to be called again.  He asserts his TCPA claims on behalf of himself and four putative classes.  (Class Action Complaint ("Complaint") [Dkt. No. 1].)

The Complaint should be dismissed because it fails to state a claim against defendant CrossCountry Mortgage, Inc. ("CrossCountry") in two fundamental ways.  First, it is devoid of any factual allegations sufficient to plead that CrossCountry has any direct or vicarious liability under the TCPA to plaintiff.  Conspicuously absent from the Complaint are any facts related to CrossCountry's role in the calls that plaintiff allegedly received.  There are no factual allegations that CrossCountry ever placed a call to plaintiff, or that anyone acting as CrossCountry's agent ever did so, or that the second defendant in this action—Michael Crawford d/b/a Direct Source ("Direct Source")—ever acted as CrossCountry's agent.  Instead, the Complaint offers only conclusory allegations that lump together both "Defendants," never distinguishing among them and never attributing to CrossCountry any particular role with respect to the calls at issue.  Based on those very same pleading defects, this Court just a few months ago dismissed a virtually identical lawsuit for failure to state a claim.  *Reo v. Caribbean Cruise Line, Inc.*, No. 1:14 CV 1374, 2016 WL 1109042, at *4-5 (N.D. Ohio Mar. 18, 2016) (Nugent, J.).  And numerous other courts around the nation have reached the same result.

Second, even if the Complaint had alleged facts sufficient to plead direct or vicarious

liability against CrossCountry, it still remains the case that the Complaint includes no factual allegations pleading a violation of the TCPA.  Plaintiff nowhere makes any allegation regarding the length or content of the any of the calls he received, or when any particular call occurred. Instead, plaintiff relies purely on conclusory allegations that merely restate the TCPA statutory elements required for private actions under § 227(b) and § 227(c) of the TCPA.  Without supporting factual allegations sufficient to allege a plausible violation of the TCPA, plaintiff's claims cannot survive a motion to dismiss.

## THE COMPLAINT[1]

Plaintiff asserts violations of § 227(b) and § 227(c) of the TCPA against CrossCountry and Direct Source, arising out of calls allegedly made to plaintiff's cellular telephone number beginning in November 2015.  (¶¶ 27-35, 43-71.)[2]  The Complaint alleges that "Defendants" (never distinguishing between them) made "repeated unsolicited calls to consumers' telephones—including cellular telephones and numbers that appear on the National Do Not Call Registry—without consent."  (¶¶ 4, 21-22, 43-71.)  According to the Complaint, these calls were made to cellular customers, including plaintiff, who allegedly had placed their cellular telephone numbers on the National Do Not Call Registry or otherwise informed "Defendants" that they did not wish to receive such calls.  (*Id.*)

Plaintiff alleges that, starting in or around November 2015 and for the following six months, he received "at least twenty (20)" calls from "Defendants" on his cellular telephone "from a variety of phone numbers associated with Defendants."  (¶¶ 28-29.)  These calls were received, he alleges, even though he registered his number on the National Do Not Call Registry

---

[1] As required by Fed. R. Civ. P. 12(b)(6), we treat the Complaint's well-pleaded allegations as true for purposes of this motion.

[2] Unless otherwise stated, all paragraph references in this memorandum are to the Complaint.

on June 29, 2006 and "repeatedly informed the Defendants: (1) that he was not interested in Defendants' products or services, that (2) that he had never given Defendants permission to call him, and (3) that Defendants were not to call him again."  (¶¶ 27, 31.)  Upon unspecified "information and belief," plaintiff alleges that "Defendants' telemarketers were calling him in an attempt to pitch him a mortgage loan."  (¶ 32.)

In lumping together the "Defendants" for all of its allegations of wrongful conduct, the Complaint never distinguishes between CrossCountry and Direct Source in any way with respect to any of the alleged calls to plaintiff.  Yet the Complaint concedes that CrossCountry and Direct Source are distinct entities with distinct roles.  CrossCountry is a full service mortgage lender headquartered in Brecksville.  (¶¶ 1-2, 8, 13.)  Direct Source operates as a telemarketing company with offices in Texas that offers direct lead generation services to companies.  (¶¶ 3, 9.)

In an effort to connect CrossCountry to the alleged calls that plaintiff received, the Complaint alleges that CrossCountry "regularly utilizes the services of third-party telemarketers and lead generation services," based on "advertised telemarketing positions," and that "CrossCountry has an extensive relationship with Direct Source" based on a website maintained by Direct Source that would allow its "telemarketers to easily enter leads and direct those leads to specific CrossCountry Mortgage loan officers."  (¶¶ 14-20.)  The Complaint does not actually make any allegation that CrossCountry made any calls to plaintiff, or that anyone else, including Direct Source, made any calls to plaintiff as an agent for CrossCountry.  Indeed, the Complaint is devoid of any facts alleging the nature of the relationship between CrossCountry and Direct Source or any other telemarketer.

## OVERVIEW OF THE TCPA

Plaintiff purports to assert claims under the TCPA based on two subsections, § 227(b), which provides "restrictions on the use of automated telephone equipment," and § 227(c), which

provides "protection of subscriber privacy rights."

Under § 227(b), a defendant may be held liable for "mak[ing] any call (other than a call . . . made with the prior express consent of the called party) using any automatic telephone dialing system [(ATDS)] or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service."  47 U.S.C. § 227(b)(1)(A)(iii).  An ATDS is equipment that "has the capacity . . . (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).  "[T]o state a claim under the TCPA [based on § 227(b)], a complaint must allege facts demonstrating that the plaintiff: 1) received a call; 2) on a cellular line for which the called party is charged for the call or on a residential telephone line; 3) using ATDS equipment or an artificial or prerecorded voice; and 4) made without prior consent and not for emergency purposes."  *Reo*, 2016 WL 1109042, at *4.[3]

Under § 227(c)(5), the TCPA provides a private right of action to "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection."  47 U.S.C. § 227(c)(5).  To state a claim based on the regulations required to be followed under § 227(c), a plaintiff must allege that he (1) received more than one call within a twelve-month period (2) that was "in violation of the regulations" and (3) that the calls were "intiate[d]" by or on behalf of the same entity.  47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c), (d); *see Wagner v. CLC Resorts & Developments, Inc.*, 32 F. Supp. 3d 1193, 1197 (M.D. Fla. 2014).

---

[3] *See also Zehala v. Am. Express*, No. 2:10-cv-848, 2011 WL 4484297, at *5 (S.D. Ohio Sept. 26, 2011) ("To state a claim under the TCPA for calls made to a cellular phone, a plaintiff must establish that: (1) a call was made to a cell or wireless phone, (2) by the use of any automatic dialing system or an artificial or prerecorded voice, and (3) without prior express consent of the called party.") (citing 47 U.S.C. § 227(b)(1)(A); *Pugliese v. Prof'l Recovery Serv., Inc.*, No. 09-12262, 2010 WL 2632562, at *7 (E.D. Mich. June 29, 2010)).

**ARGUMENT**

In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), plaintiffs must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (internal quotations omitted); *accord MacDermid v. Discover Fin. Servs.*, 488 F.3d 721, 733 (6th Cir. 2007) ("conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss"). To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *accord Reo v. Caribbean Cruise Line, Inc.*, No. 1:14-cv-1374-DJN, 2016 WL 1109042, at *2 (N.D. Ohio Mar. 18, 2016) (a complaint "must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Further, Rule 8(a)(2)'s requirement that a well-pleaded complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" is not satisfied unless it is clear what each defendant is alleged to have done wrong. Group accusations do not satisfy the Rule 8 standard: "Where a complaint names multiple defendants, that complaint must provide a plausible factual basis to distinguish the conduct of *each* of the defendants." *Ochre LLC v. Rockwell Architecture Planning and Design, P.C.*, No. 12 Civ. 2837, 2012 WL 6082387, at *6 (S.D.N.Y. Dec. 3, 2012) (emphasis added) (dismissing copyright-infringement claim where

plaintiff sued four entirely separate entities and "fail[ed] to isolate the key allegations against each defendant"). Where a complaint fails to meet this standard, it should be dismissed pursuant to Rule 12(b)(6). *Id.* at *7; *accord Eberhard Architects, LLC v. Bogart Architecture, Inc.*, No. 1:14 CV 1185, 2014 WL 4354561, at *3 (N.D. Ohio Aug. 29, 2014) (dismissing complaint where specific allegations went only to defendant's identification as a lender, while all of the conduct allegations "lump all defendants together" and "generically claim" that all are liable, because such allegations "constitute nothing more than a 'formulaic recitation of the elements'" and "shed no light on how a lender could have engaged in copyright infringement").[4]

Here, the Complaint not only fails to plead that CrossCountry has any liability to plaintiff under the TCPA, but also fails to plead a violation of the TCPA in the first instance.

I.     **The Complaint Should be Dismissed for Failing to Plead Any Facts Sufficient to State a Claim for Direct or Vicarious Liability Against CrossCountry Under the TCPA.**

A.     **The Complaint's Group Pleading Is Insufficient to Allege Any Direct Liability Against CrossCountry For Violation of the TCPA.**

It is axiomatic that, to state a direct-liability claim against a defendant under any subsection of the TCPA, a complaint must allege that the defendant actually "made" or "initiated"—that is, physically placed—the call at issue. *Selou v. Integrity Sol. Servs., Inc.*, No. 15-10927, 2016 WL 612756, at *3-4 (E.D. Mich. Feb. 16, 2016) (direct liability applies only to "the maker or initiator of the calls under the TCPA").[5] The Complaint contains no such

---

[4] *See also Aaron v. Durrani*, No. 1:13-CV-202, 2014 WL 996471, at *4 (S.D. Ohio Mar. 13, 2014) (holding Rule 8 is violated where "Plaintiffs lump all Defendants together and attempt to pass off legal conclusions as factual allegations").

[5] *Accord Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 771 (N.D. Ill. 2014) (a defendant that did not "physically place[] the allegedly unlawful telemarketing calls at issue" cannot be held directly liable, as "a seller generally does not 'initiate' calls placed by third-party telemarketers") (citing *In re Dish Network, LLC*, 28 FCC Rcd. 6574, 6593 (2013)); *Patton v. Corinthian Colls., Inc.*, No. 13-14814, 2014 WL 1118467, at *2 (E.D. Mich. Mar. 20, 2014) ("'To state a claim under the TCPA for calls made to a cellular phone, a plaintiff must establish that: Defendant made the call; Plaintiff was

allegations here, nor has it alleged any facts hinting that plaintiff might be able to do so as to

CrossCountry.  Plaintiff is essentially speculating that CrossCountry was associated with the

calls he allegedly received.  He has alleged no facts to make his assertions against CrossCountry

plausible.  There are no allegations setting out the content of any call; none tying CrossCountry

to any phone number identified in the Complaint; no allegation that anyone ever told plaintiff

that a call was being made by or on behalf of CrossCountry; and only vague assertions of a

business relationship between CrossCountry and Direct Source, along with even vaguer

allegations about CrossCountry's use of telemarketers in the abstract.  (*See, e.g.*, ¶¶ 13-18, 20,

22-24, 28-32.)

Instead of making any allegation concerning CrossCountry specifically, the Complaint

adopts a prohibited "group-think" approach to pleading.  It lumps both of the defendants into the

collective term "Defendants," essentially alleging that both defendants engaged equally in every

act alleged in the Complaint.  (¶¶ 4-6, 21, 25-26, 28-35, 37-42, 44-48, 50-54, 60-64, 66-71.)  And

it does so without regard to the fact that both the case law and FCC statements are clear that *only*

the person or entity who made or initiated the call at issue may be held directly liable.  *See In re*

*Dish Network, LLC*, 28 FCC Rcd. 6574, at 6582, ¶ 24, 2013 WL 1934349 (F.C.C. May 9, 2013)

("[o]ur rules have long drawn a distinction between the telemarketer who initiates a call and the

seller on whose behalf a call is made," and "a seller is not directly liable for a violation of the

TCPA unless it initiates a call") (responding in part to referral from the Sixth Circuit in *Charvat*

*v. EchoStar Satellite, LLC*, 630 F.3d 459, 465-66, 468 (6th Cir. 2010)).

---

charged for the call; and the call was made using an automatic telephone dialing system or an artificial or
prerecorded voice.'") (quoting *Mashiri v. Ocwen Loan Serv., LLC*, No. 3:12-cv-02838-L-MDD, 2013 WL
5797584, at *5 (S.D. Cal. Oct. 28, 2013)); *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D.
Cal. 2012) ("The plain language of the TCPA assigns civil liability to the party who 'makes' a call."),
*aff'd*, 582 F. App'x 678 (9th Cir. 2014).

Specifically, the Complaint's key allegations allege merely that "*Defendants* utilized (and continue to utilize) a sophisticated telephone dialing system to call cellular telephone users *en masse* for the purpose of promoting its services" (¶ 19); that "*they* placed (and continue to place) phone calls to consumers that never provided consent to be called and to consumers' cellphones with whom *they* had no prior dealings or relationships" (¶ 21); that "*Defendants* placed (and continue to place) repeated and unwanted calls to consumers whose phone numbers are listed on the National Do Not Call Registry" (¶ 21); that "*they* have made unsolicited calls to cell phone numbers with *their* automatic telephone dialing system ('ATDS'), which is expressly prohibited by the TCPA" (¶ 22); that "[i]n making the phone calls at issue in this Complaint, *Defendants* and/or their agent utilized an ATDS under the TCPA" (¶ 25); and that "*Defendants* knowingly made (and continue to make) telemarketing calls without the prior express consent of the call recipients and knowingly continues [*sic*] to call such consumers after requests to stop" (¶ 26).[6] Likewise, all of the Complaint's allegations under the heading "Facts Specific to Plaintiff Seri" refer to "Defendants" exclusively as a collective.  (¶¶ 28-35.)

Indeed, the only allegations that apply to CrossCountry individually, rather than as lumped in with Direct Source, have nothing to do with making or initiating any calls to plaintiff. Those allegations assert that CrossCountry "is a full service mortgage lender" (¶ 13); "regularly utilizes the services of third-party telemarketers and lead generation services" (¶ 14); "has an extensive relationship with Direct Source, a Texas-based telemarketer" (¶ 15); and "ha[s] advertised telemarketing positions" (¶ 20).  While the Complaint purports to identify actual telephone numbers from which the plaintiff received calls on his cell phone, it alleges only that those numbers are "associated with *Defendants*" collectively.  (¶ 28 (emphasis added).)

---

[6] All emphases added.

Likewise, the Complaint's only effort to tie any of those telephone numbers to any defendant merely refers to a website listing the comments of anonymous users of that website about calls allegedly received from one of the telephone numbers, none of which references CrossCountry. (¶ 24.)  Tellingly, the only allegation that even comes close to describing the content of any call plaintiff received is that "[o]n information and belief, *Defendants' telemarketers were calling him* in an attempt to pitch him a mortgage loan."  (¶ 32.)[7]  And even that allegation is hopelessly insufficient, in that it offers no fact to suggest that any such calls were made or initiated by CrossCountry.

Courts routinely find such vague allegations insufficient to assert a claim for direct liability under the TCPA.  In a decision just last year, the federal court for the Southern District of Ohio dismissed a complaint under virtually identical circumstances.  *See Murray v. Choice Energy, LLC*, No. 1:15-cv-60, 2015 WL 4204398, at *4-5 (S.D. Ohio July 10, 2015).  The plaintiff's complaint in that case, as here, used the collective "Defendants" to lump a seller and a third-party telemarketer together to allege actions or omissions that allegedly violated the TCPA, "without indicating which particular Defendant took the action in question."  *Id.* at *4.  The plaintiff tried to use those collective allegations to support a direct-liability claim against the seller as opposed to the third-party telemarketer.  The court rejected that argument, reasoning that the Complaint had failed to allege that the seller itself initiated any of the calls, or was so involved in placing the calls that it could be deemed to have initiated them.  For example, "[t]here [we]re no allegations in the complaint that Choice Energy [the seller] had any active role or involvement in placing the calls, such as giving Premiere [the third-party telemarketer] 'specific and comprehensive instructions as to timing and the manner of the call.'"  *Id.* at 5.  The

---

[7] *See also* ¶ 16 (alleging that "*Direct Source* has a website that . . . allows *their* telemarketers to . . . direct those leads to specific CrossCountry Mortgage loan officers") (emphases added).

court therefore held that plaintiff had failed to state a claim for direct liability.

The same is true here.  Plaintiff has not alleged—plausibly or otherwise—that CrossCountry, as opposed to Direct Source, made any of the calls alleged in the Complaint.  Taking the Complaint's allegations as true, it is just as plausible that CrossCountry played no role whatsoever in the calls plaintiff received.  The Complaint therefore fails to state any direct-liability theory against CrossCountry under the TCPA, and should be dismissed.

### B. The Complaint Fails to Allege that CrossCountry is Vicariously Liable for Any Alleged TCPA Violation by Direct Source Or Anyone Else.

To the extent the Complaint attempts to assert a vicarious-liability theory against CrossCountry under the TCPA for the actions of a third-party telemarketer (whether Direct Source or any other unnamed party), plaintiff has failed to allege any facts sufficient to plead such a claim.  The TCPA treats sellers very differently than third-party telemarketers.[8]  According to the FCC, "a seller is not directly liable for a violation of the TCPA unless it initiates a call, but may be held vicariously liable under federal common law agency principles for a TCPA violation by a third-party telemarketer."  *In re Dish Network, LLC*, 28 FCC Rcd. 6574, at 6582, ¶ 24, 2013 WL 1934349 (F.C.C. May 9, 2013) (responding in part to referral from the Sixth Circuit in *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 465-66, 468 (6th Cir. 2010)); *id.* at 6583, ¶ 27 ("Our rules thus draw a clear distinction between a call that is made by a seller and a call that is made by a telemarketer on the seller's behalf.").  Even assuming the Complaint adequately alleges that CrossCountry is a seller—which it does not, because there is no factual allegation that any of the calls at issue were made on behalf of CrossCountry—the Complaint alleges no facts supporting a theory that CrossCountry is vicariously liable.

---

[8] The regulations define a "seller" as "the person or entity on whose behalf a telephone call or message is initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person."  47 C.F.R. § 64.1200(f)(9).

"[T]he mere possibility that a defendant may be vicariously liable is not sufficient to state a claim for relief, and pleading facts that are merely consistent with liability is not enough." *Cunningham v. Kondaur Capital*, No. 3:14-1574, 2014 WL 8335868, at *7 (M.D. Tenn. Nov. 19, 2014) (citing *Iqbal*, 556 U.S. at 678), *report and recommendation approved*, 2015 WL 1412737 (M.D. Tenn. Mar. 26, 2015).  Rather, as this Court explained just three months ago, vicarious liability under the TCPA depends on "whether the [complaint] sets out sufficient allegations to support a plausible claim under federal common law principles of agency against [a defendant company who retained a telemarketer]."  *Reo*, 2016 WL 1109042, at *4 (N.D. Ohio Mar. 18, 2016).  In order to plead an agency relationship under federal common law, a complaint must allege "facts that show that [the defendant] had any power to give interim instructions or otherwise had any control over the performance of [the telemarketer]."  *Id.* at *5; *accord Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 138 (E.D.N.Y. 2015) ("the existence of a contract between [the defendant] and [telemarketer]—even one that imposes certain constraints on [the telemarketer]—does not necessarily mean that [the defendant] had the power to give 'interim instructions' to [the telemarketer], the hallmark of an agency relationship"); *Murray*, 2015 WL 4204398, at *5 (allegations that a seller "outsourced" its telemarketing calls "are devoid of specific factual allegations indicative of an agency relationship, including that [a seller] had the right to control and the power to give interim instructions").  In *Reo*, the complaint alleged no such facts.  The plaintiff had alleged merely that the defendant "retained the services of third-party marketers . . . to solicit Plaintiffs' business," and that those telemarketers "placed a significant number of telephonic communications to Plaintiffs' residential landlines and cellular telephone numbers to solicit [the defendant]'s services."  2016 WL 1109042, at *5.  Because those "sparse allegations" did "not allege any facts that show that

[the defendant] had any power to give interim instructions or otherwise had any control over the performance of [the telemarketers]," this Court granted the defendant's motion to dismiss.  *Id.*

The Complaint's allegations are even more deficient here than they were in *Reo*.  At least in that case, the complaint alleged that the telemarketers had been specifically retained by the defendant.  No such allegation is made here.  Instead, the Complaint alleges only that "CrossCountry Mortgage has an extensive relationship with Direct Source" (¶ 15); that "CrossCountry Mortgage readily utilizes the services of third-party telemarketers and lead generation services" (¶ 14); and that Direct Source maintained an internal website to provide leads to CrossCountry (¶¶ 16-18).  As in *Reo*, none of these allegations comes close to pleading that CrossCountry had the power to give interim instructions to Direct Source or anyone else who might have called plaintiff.  Indeed, there are absolutely no allegations of any control at all over Direct Source's telemarketing activities.  Accordingly, as in *Reo*, plaintiff's Complaint falls far short of pleading any vicarious-liability theory.

## II.    By Simply "Parroting" the Statutory Language of the TCPA, the Complaint Fails to Allege Facts Sufficient to Plead Any Violation of the TCPA.

Even if the Complaint had alleged a direct or vicarious-liability theory against CrossCountry—and it does not—the Complaint nonetheless should be dismissed because it fails to allege facts satisfying the remaining elements of a TCPA violation.  In the Northern District of Ohio, a plaintiff seeking to plead a TCPA claim must do more than "parrot[] the language of the statute" in its complaint.  *Reo*, 2016 WL 1109042, at *4 (N.D. Ohio Mar. 18, 2016).  This Court has joined "the majority of courts who require some additional factual allegations" to satisfy the plausibility standard for pleading a TCPA claim.  *Id.*  At a minimum, the Complaint must allege facts regarding the content of the calls received, the approximate dates and times that the calls were received, and facts showing that an ATDS was used.  *Id.* (collecting cases).  Other courts

within the Sixth Circuit are in accord. *See, e.g.*, *Selou*, 2016 WL 612756, at \*4-5 (dismissing direct liability claim where no facts were alleged to support the plaintiff's allegation that the defendant made any calls, and dismissing vicarious liability claims where "Plaintiff summarily alleges that all defendants are vicariously liable for the violations of the statute" and complaint was "devoid of facts supporting this legal conclusion"); *Aikens v. Synchrony Fin.*, No. 15-10058, 2015 WL 5818911, at \*2-4 (E.D. Mich. July 31, 2015) (noting that although "specific details" are not required, plaintiff must provide more than the recital of TCPA statutory elements with conclusory statements to survive motion to dismiss), *report and recommendation adopted*, 2015 WL 5818860 (E.D. Mich. Aug. 31, 2015); *Murray*, 2015 WL 4204398, at \*3-6 (dismissing § 227(c) claims for failing to plead "any factual allegations to support the 'more' that is necessary to plausibly hold [defendant] vicariously liable"); *Hurtwiz v. Pinnacle Fin. Group, Inc.*, No. 14-10040, 2014 WL 2479999, at \*3 (E.D. Mich. June 3, 2014) (dismissing complaint "because it fails to plead any of the facts necessary to satisfy the *Twombly/Iqbal* standard for a TCPA claim, namely '(i) the number of allegedly unlawful calls received, (ii) the approximate dates and times of these calls, and (iii) circumstances that would support the inference that these calls were placed with a[n] automatic telephone dialing system or an artificial or prerecorded voice'") (quoting *Wallack v. Mercantile Adjustments Bureau, Inc.*, No. 14-10387, 2014 WL 1515852, at \*2 (E.D. Mich. Apr. 18, 2014) (collecting cases with similar pleadings)).

This Court's recent decision in *Reo v. Caribbean Cruise Line* is directly on point. 2016 WL 1109042, at \*3-4 (N.D. Ohio Mar. 18, 2016). In *Reo*, as here, the Complaint "failed to provide any information about the content of the calls [the plaintiffs] received or how they knew it constituted a prerecorded or artificial voice or how they knew an ATDS system was used" in violation of the TCPA. *Id.* at \*4. According to this Court, mere allegations of numerous calls

received to solicit the defendant's services are not enough without additional facts to render the alleged TCPA violations plausible.  *Id.*  Thus, where a complaint contains "no description of the content of the calls (or texts) and no information regarding the frequency of the calls or why they believed that an ATDS was used or why they believed that an 'artificial or prerecorded voice' was used such as a period of 'dead air' after answering a call or the inability to interrupt a message or to talk to a human being," a dismissal was required.  *Id.*

The Complaint here suffers from the same defects in purporting to assert claims under § 227(b) of the TCPA.  Ignoring the requisite pleading standard, the Complaint offers nothing more than the bare elements of TCPA claims and parroted statutory language, along with conclusory statements.  Nowhere does plaintiff allege any facts regarding the timing or purpose of the calls at issue, or a description of the content of the calls.  Nor does plaintiff offer any facts alleging anything more than conjecture that an ATDS was used to make the calls he allegedly received.  (*See, e.g.*, ¶¶ 19, 21-22, 25-26, 28-35.)  Even assuming that "an allegation that a party used an ATDS is both an element of the cause of action and an assertion with some factual content," courts routinely hold that "by itself this assertion does not render Plaintiff's claim plausible, because alone it does not explain why or how Plaintiff knows that an ATDS was used."  *Aikens*, 2015 WL 5818911, at *3-4 (collecting cases and holding that "it is entirely reasonable to demand that plaintiffs provide sufficient information about the timing and content of the calls they receive to give rise to the reasonable belief that an ATDS was used").[9]

Plaintiff's attempt to plead a claim under § 227(c) for "violation of the regulations" is

---

[9]  The Complaint vaguely alleges that "[p]laintiff heard a noticeable delay before being connected to an operator when Defendants made unsolicited telemarketing calls to his cellular phone," without alleging which calls had such a delay, when they occurred, or any facts regarding the content of such calls.  (¶ 30.)  Absent such additional facts, even the allegation of a delay is insufficient to allege a plausible TCPA violation.  *See Reo*, 2016 WL 1109042, at *4; *Aikens*, 2015 WL 5818911, at *3.

equally defective.  The relevant regulations require that the calls at issue must have been "telephone solicitations" or made for "telemarketing purposes."  *See* 47 C.F.R. § 64.1200(c), (d).  By definition, both "telephone solicitation" and "telemarketing" require that the call be made "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person."  47 C.F.R. § 64.1200(f)(12), (14).  As discussed above, plaintiff has not alleged facts supporting the Complaint's conclusion that this element of his claims is satisfied.  The bare conclusory allegation that "[o]n information and belief, Defendants' telemarketers were calling him in an attempt to pitch him a mortgage loan" (¶ 32) is insufficient as a matter of law.  *See Starkey v. JPMorgan Chase Bank, N.A.*, 573 F. App'x 444, 447-48 (6th Cir. 2014) (an allegation "on information and belief" is insufficient where plaintiffs "must have had personal knowledge" of telephone call content "[b]ecause one of the [plaintiffs] was on the other end of line"); *accord Norman v. N. Illinois Gas Co.*, No. 13 CV 3465, 2013 WL 5746329, at *3 (N.D. Ill. Oct. 23, 2013) (dismissing § 227(c) claims for failure to allege facts to "support an inference that [the calls] were for the 'purpose of encouraging the purchase or rental of, or investment in' [defendant's] services").

Simply put, the Complaint is missing the facts that this Court and others have made clear are necessary in order to plead a violation of the TCPA.  It is a prime example of the type of insufficient pleading of TCPA claims that courts regularly dismiss.  The result here should likewise be dismissal.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed for failure to state a claim.

Dated:  June 28, 2016                      Respectfully submitted,


                                           /s/ Michael A. Platt
                                           Michael A. Platt
                                           (Ohio Bar Registration No. 0082926)
                                           E-mail:  maplatt@jonesday.com
                                           Kristin S.M. Morrison
                                           (Ohio Bar Registration No. 0085004)
                                           E-mail:  kmorrison@jonesday.com
                                           JONES DAY
                                           North Point
                                           901 Lakeside Avenue
                                           Cleveland, Ohio  44114-1190
                                           Telephone:     (216) 586-3939
                                           Facsimile:     (216) 579-0212


                                           David L. Firestine
                                           (Ohio Bar Registration No. 0072621)
                                           E-mail:  dlf@witscheylaw.com
                                           WITSCHEY WITSCHEY & FIRESTINE
                                             CO., LPA
                                           405 Rothrock Road, Suite 103
                                           Akron, Ohio  44321-3125
                                           Telephone:     (330) 665-5117
                                           Facsimile:     (330) 665-7615

                                           *Attorneys for Defendant*
                                           *CrossCountry Mortgage, Inc.*

## CERTIFICATE OF COMPLIANCE

I hereby certify that, for purposes of Local Rule 7.1(f), this case has not been assigned to any track, and that this Memorandum of Law in Support of Defendant CrossCountry Mortgage, Inc.'s Motion to Dismiss For Failure to State a Claim adheres to the 20-page limitation for memorandum relating to dispositive motions in unassigned cases.

/s/ Michael A. Platt
Michael A. Platt
(Ohio Bar Registration No. 0082926)
E-mail:  maplatt@jonesday.com
Kristin S.M. Morrison
(Ohio Bar Registration No. 0085004)
E-mail:  kmorrison@jonesday.com
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114-1190
Telephone:     (216) 586-3939
Facsimile:     (216) 579-0212

David L. Firestine
(Ohio Bar Registration No. 0072621)
E-mail:  dlf@witscheylaw.com
WITSCHEY WITSCHEY & FIRESTINE
  CO., LPA
405 Rothrock Road, Suite 103
Akron, Ohio  44321-3125
Telephone:     (330) 665-5117
Facsimile:     (330) 665-7615

*Attorneys for Defendant*
*CrossCountry Mortgage, Inc.*

NAI-1501275148

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Memorandum of Law in Support of Defendant CrossCountry Mortgage, Inc.'s Motion to Dismiss For Failure to State a Claim was filed electronically on June 28, 2016.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/ s/ Michael A. Platt
Michael A. Platt
(Ohio Bar Registration No. 0082926)

*One of the Attorneys for Defendant*
*CrossCountry Mortgage, Inc.*
