**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER SERI,** *individually and* | ) | **CASE NO. 1:16-cv-01214-DAP** |
| *on behalf of all other similarly situated* | ) | |
| | ) | |
| **Plaintiff,** | ) | **JUDGE DAN AARON POLSTER** |
| | ) | |
| **vs.** | ) | <u>**OPINION AND ORDER**</u> |
| | ) | |
| **CROSSCOUNTRY MORTGAGE, INC. and** | ) | |
| **MICHAEL CRAWFORD d/b/a DIRECT** | ) | |
| **SOURCE** | ) | |
| | ) | |
| **Defendants.** | ) | |

Before the Court is Defendant CrossCountry Mortgage's Motion to Dismiss, Doc #: 4.

For the reasons discussed below, this Motion is granted.

**I. Background**

Christopher Seri filed this class action suit against Defendants CrossCountry Mortgage,

Inc. ("CrossCountry") and Michael Crawford doing business as Direct Source ("Direct Source")

for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. (the

"TCPA"). Compl. ¶ 1–4, Doc. #: 1. In his Complaint, Seri alleges that CrossCountry regularly

utilizes the services of third-party telemarketers and has an extensive relationship with Direct

Source. Compl. ¶¶ 14-16. Seri further claims that Cross Country and Direct Source repeatedly

call consumers on their cellular phones and consumers whose phone numbers are listed on the National Do Not Call Registry. Compl. ¶ 21.

Seri, whose cellular phone number is listed on the National Do Not Call Registry, began receiving calls in or around November 2015 from CrossCountry and/or Direct Source. Compl. ¶¶ 27–28. Seri claims that he received these unwarranted calls "from a variety of phone numbers associated with Defendants" at least twenty times. Compl. ¶¶ 28–29, 31. Seri "heard a noticeable delay before being connected to an operator" during these calls. Compl. ¶ 30.

On May 19, 2016, Seri filed suit in this Court. Doc #: 1. On June 28, CrossCountry filed the instant Motion to Dismiss, Doc #: 4. Seri filed a Response on August 8, Doc #: 12, and CrossCountry filed a Reply on August 25, Doc #: 13.

No proof of service of Direct Source has been filed, and Direct Source has not appeared.

**II. Legal Standard**

Pursuant to Fed. R. Civ. P. 8(a)(2), a complaint must allege sufficient facts to compose "a short and plain statement of the claim showing that the pleader is entitled to relief." "To state a valid claim, a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). In evaluating a Rule 12(b)(6) motion to dismiss, courts must construe the complaint in the light most favorable to the plaintiff and accept the complaint's allegations as true, drawing all reasonable inferences in favor of the plaintiff. *Coley v. Lucas Cty., Ohio*, 799 F.3d 530, 537 (6th Cir. 2015).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that

-2-

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted).

"For a claim to be viable, the complaint must, at a minimum, give the defendant fair notice of what the claim is and the grounds upon which it rests." *Marie v. Am. Red Cross*, 771 F.3d 344, 364 (6th Cir. 2014) (internal quotation marks omitted).

## III. Discussion of the Motion to Dismiss

The Complaint alleges four claims implicating two federal statutes: 47 U.S.C. § 227(b) and 47 U.S.C. § 227(c).  The Court considers these two statutes in order.

### A. 47 U.S.C. § 227(b) ("Protection of subscriber privacy rights").

Seri has failed to properly plead that CrossCountry has violated § 227(b).

#### 1. Pleading Requirements for § 227(b)

In relevant part, § 227(b)(1) provides,

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States--
(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice–
. . .
(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States;

-3-

Thus, to state a claim a complaint must allege a defendant (1) made any call (2) using any automatic telephone dialing system (an "ATDS"), (3) to any telephone number assigned to a paging service or cellular telephone service, (4) absent the prior express consent of the recipient. *Id.*; *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 666–67 (2016), *as revised* (Feb. 9, 2016); *Reo v. Caribbean Cruise Line, Inc.*, No. 1:14 CV 1374, 2016 WL 1109042, at *4, 2016 U.S. Dist. LEXIS 35596, at *9 (N.D. Ohio Mar. 18, 2016) (describing elements similarly).[1]

### 2. Application

Here, Seri has properly pled only the latter three elements, with regard to CrossCountry.

### a. ATDS, Cellular Phone, and Consent

First, Seri reasonably pleads the use of an ATDS. Seri alleges, "Defendants [CrossCountry and Direct Source] utilized (and continue to utilize) a sophisticated telephone dialing system to call cellular telephone users *en masse*." Compl. ¶ 19. Seri further alleges "the hardware and software . . . has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion . . . ." Compl. ¶ 25. Seri supports these conclusions with the factual allegation that "Plaintiff heard a noticeable delay before being connected to an operator when Defendants made unsolicited telemarketing calls . . . ." Compl. ¶ 30. Like other courts, this Court recognizes the difficulty a plaintiff faces in knowing the type of calling system used

---

[1] CrossCountry argues: "This Court has joined 'the majority of courts who require some additional factual allegations' to satisfy the plausibility standard for pleading a TCPA claim. At a minimum, the Complaint must allege facts regarding the content of the calls received, the approximate dates and times that the calls were received, and facts showing that an ATDS was used." Mot. to Dismiss 12, *quoting Reo v. Caribbean Cruise Line, Inc.*, 2016 WL 1109042, at *4; *accord* Reply 18–19. CrossCountry's conclusion, however, overstates the holdings of the various cited case, and the Court accordingly declines to read such elements into TCPA claims.

without the benefit of discovery, and therefore finds these allegations, particularly the allegation regarding the "noticeable delay" Seri experienced, sufficient at the motion to dismiss stage. *See Reo v. Caribbean Cruise Line, Inc.*, No. 1:14 CV 1374, 2016 WL 1109042, at *4 (N.D. Ohio Mar. 18, 2016) (emphasis added) ("This Court is persuaded by the majority of courts who require some additional factual allegations, ***no matter how minor***, in addition to parroting the language of the statute [when pleading the ATDS issue]."); *Aikens v. Synchrony Fin.*, No. 15-10058, 2015 WL 5818911, at *4, 2015 U.S. Dist. LEXIS 115467, at *12 (E.D. Mich. July 31, 2015) ("Plaintiff could plead those facts which are likely within her knowledge . . . the content of Defendant's calls, whether she spoke to a human, whether there was dead air prior to a human picking up the line, or any other facts which may tend to make the use of an ATDS more likely.") *report and recommendation adopted*, 2015 WL 5818860, 2015 U.S. Dist. LEXIS 115023, (E.D. Mich. Aug. 31, 2015).

Next, Seri properly alleges the phone calls were directed to a cellular phone. Compl. ¶ 28 (alleging Seri received calls "on his cellular telephone"); Compl. ¶ 30 (alleging calls "to his cellular phone."). While the Court recognizes that these allegations offer little more than the "bare elements of TCPA claims and parroted statutory language, along with conclusory statements," Mot. to Dismiss 14, the Court is willing to accept at the motion to dismiss stage that Seri knows whether his phone is, in fact, a cellular phone, and consequently that the above-quoted statements from the Complaint represent assertions of this fact and not mere legal conclusions.

Similarly, Seri has fairly alleged the absence of prior express consent. Compl. ¶ 31 ("Plaintiff Seri has repeatedly informed the Defendants: . . . that (2) that he had never given

Defendants permission to call him, and (3) that Defendants were not to call him again."); Compl. ¶ 34 ("Simply put, Plaintiff has never provided any form of prior express written consent to Defendants to place calls to him . . . .").

### b. Calls

However, Seri has not properly plead that CrossCountry made any calls to him.

Seri argues three possible ways CrossCountry could be liable for phone calls made to Seri. First, it is possible that CrossCountry and Direct Source each independently made offending phone calls: i.e., that Direct Source used an ATDS to dial cell phones without consent and also that CrossCountry itself used an ATDS to dial cell phones without consent. Second, it may be possible for CrossCountry to be directly liable for calls made by Direct Source. While, generally, sellers are not directly liable for calls by third-party telemarketers, the Court notes the possibility of an exception to this general rule. *See In the Matter of Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6583 (2013) ("[O]ne can imagine a circumstance in which a seller is so involved in the placing of a specific telephone call as to be directly liable for initiating it—by giving the third party specific and comprehensive instructions as to timing and the manner of the call, for example"). Third, CrossCountry may by vicariously liable for calls made by Direct Source as its agent. *Id.* at 6587 ("While section 227(b) does not contain a provision that specifically mandates or prohibits vicarious liability, we clarify that the prohibitions contained in section 227(b) incorporate the federal common law of agency and that such vicarious liability principles reasonably advance the goals of the TCPA."). The Complaint, however, does not allege facts which clearly support any of these three theories of liability.

Here, regarding CrossCountry's role in the offending calls, Seri allegations include,

- "Defendants CrossCountry Mortgage and Direct Source conducted (and continue to conduct) a wide scale telemarketing campaign that features the making of repeated unsolicited calls to consumers' telephones—including cellular telephones and numbers that appear on the National Do Not Call Registry—without consent . . . ." Compl. ¶ 4.
- "Defendants utilized (and continue to utilize) a sophisticated telephone dialing system to call cellular telephone users en masse for the purpose of promoting its services, often times calling consumers on their cellular phones." Compl. ¶ 19.
- "In Defendants' overzealous marketing attempts, they placed (and continue to place) phone calls to consumers that never provided consent . . . ." Compl. ¶ 21.
- "CrossCountry Mortgage and Direct Source use a variety of local phone numbers to make these unlawful sales calls to consumers." Compl. ¶ 23.
- "Defendants and/or their agent utilized an ATDS . . . ." Compl. ¶ 25.
- "Defendants knowingly made (and continue to make) telemarketing calls without the prior express consent . . . ." Compl. ¶ 26.
- "Starting in or around November 2015, Plaintiff Seri began receiving calls from Direct Source and/or CrossCountry Mortgage on his cellular telephone from a variety of phone numbers associated with Defendants, including 510-730-3142, 247-632-1471, 209-271-4442, 512-999-7211, and 916-634-0107." Compl. ¶ 28.
- "Over the course of the next six months, Defendants called Plaintiff at least twenty (20) times." Compl. ¶ 29.

Notably, these allegations do not describe what individual roles CrossCountry and Direct Source had in making the alleged phone calls. CrossCountry correctly observes that Seri has "lumped" CrossCountry and Direct Source together for most allegations. While this style of pleading is not necessarily fatal to the Complaint, such pleading makes a complaint less likely to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Marie*, 771 F.3d 364; *see also* Reo, 2016 WL 1109042, at *3 ("Defendants' [sic] argue that Plaintiffs' 'shotgun' style complaint lumping the defendants and claims together results in contradictory and confusing allegations, requiring dismissal. . . . These discrepancies are sloppy and mildly confusing but, standing alone, do not require dismissal."). Here, the Complaint does not describe with any clarity what CrossCountry's actual, individual role in the offending call is alleged to be.

For example, alleging that "Defendants and/or their agent utilized an ATDS" or "they placed (and continue to place) phone calls to consumers" confusingly combines the likely disparate acts of two parties into one allegation with no way to understand which party allegedly did what acts.

Moreover, while the factual allegations are *not inconsistent* with the conclusion that CrossCountry and Direct Source each independently made offending phone calls, nothing in the facts actively *supports the inference* that CrossCountry made any phone calls, either. Seri has not alleged that any call involved a CrossCountry operator or telemarketer or that any speaker identified him- or herself as affiliated with CrossCountry. Seri alleges having received calls from five phone numbers but alleges no facts suggesting any of the numbers is associated with CrossCountry. And, in fact, Seri does not even allege that CrossCountry products or services were offered for sale during any phone calls. *See* Compl. ¶ 32 (saying only, "On information and belief, Defendants' telemarketers were calling him in an attempt to pitch him a mortgage loan."). The Court does not suggest that these specific allegations are either necessary or sufficient, but rather simply observes that the Complaint insufficiently alleges facts supporting the conclusion that CrossCountry independently made any of the offending calls.

The Complaint's factual allegations similarly do not support either the vicarious or direct liability of CrossCountry using Direct Source as an agent or intermediary. In addition to the general allegations about the calls, described above, the Complaint alleges a few specific facts about the relationship between Direct Source and CrossCountry.

- "Defendant CrossCountry Mortgage regularly utilizes the services of third-party telemarketers and lead generation services. Specifically, CrossCountry Mortgage has an extensive relationship with Direct Source, a Texas-based telemarketer." Compl. ¶¶ 14–15.

-8-

- Direct Source set up a webpage, which includes names of CrossCountry employees, to send leads to CrossCountry. Compl. ¶¶16–18.
- "Direct Source seeks to generate leads for businesses that have contracted with it to receive its leads, including mortgage companies such as Defendant CrossCountry Mortgage." Compl. ¶ 22.

First, these allegations are insufficient to allege an agency relationship. Liability by agency relationship may be effected through the delegation of actual authority, apparent authority, or ratification through acceptance of benefits of the acts. *In the Matter of Dish Network*, 28 F.C.C. Rcd. at 6586. The FCC has provided examples of what this might entail:

> To provide guidance in this area, we find that the following are illustrative examples of evidence that may demonstrate that the telemarketer is the seller's authorized representative with apparent authority to make the seller vicariously liable for the telemarketer's section 227(b) violations. For example, apparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct. At a minimum, evidence of these kinds of relationships which consumers may acquire through discovery, if they are not independently privy to such information should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent.

*In the Matter of Dish Network*, 28 F.C.C. Rcd. at 6592.[2] The examples described in *In the Matter*

---

[2] Agency is typically a factual issue, and a plaintiff is only required to allege a factual basis that gives rise to an inference of an agency relationship. Seri correctly notes that the FCC

-9-

*of Dish Network*, while neither a complete nor binding list of factors, are instructive and illustrate effectively what Seri's Complaint does not allege. The only fact purporting to link CrossCountry to Direct Source's calls is a leads website allegedly setup by Direct Source. Seri does not allege, however, facts suggesting that CrossCountry received leads or generated sales from this website, potentially ratifying Direct Source's tactics, or how this website might be related to any calls he actually received. While this website may support an inference of a business relationship broadly, it simply does not imply an agency relationship and does not alone link CrossCountry to any particular calls. Seri also does not allege that his personal information was passed to or from CrossCountry or that Direct Source had access to otherwise-confidential CrossCountry information. Seri does not even allege that any phone call included reference to CrossCountry's name, products, or trademarks. Again, the Court is not enumerating what might be necessary or sufficient allegations, but rather emphasizes the Complaint's paucity of factual allegations and failure to support an inference of vicarious liability.

Second, it is thus readily apparent that nothing in the alleged relationship between CrossCountry and Direct Source permits inference of "a circumstance in which a seller is so involved in the placing of a specific telephone call as to be directly liable for initiating it." *In the Matter Dish Network*, 28 F.C.C. Rcd. at 6583. Seri has plead insufficient facts to support such a direct liability theory.

---

stressed that nothing in its order "requires a consumer to provide proof—at the time it files its complaint—that the seller should be held vicariously liable for the offending call." *In the Matter Dish Network*, 28 F.C.C. Rcd. at 6593. This is consistent with the requirements of Federal Rule of Civil Procedure 8, which requires that a complaint need not contain proof, but rather enough factual content "to raise a reasonable expectation that discovery will reveal evidence" of a claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

In sum, the Complaint alleges no facts to support CrossCountry's liability for any calls. Based on the Complaint, it is, in fact, unclear how or why Seri believes CrossCountry—as opposed to any other specific seller—was involved in any of the calls he received. *See* Compl. ¶ 3 ("Direct Source . . . performs live outbound lead qualification for mortgage companies and others."). *Iqbal* explains that there is no "probability requirement," but requires more than "a sheer possibility" of liability. 556 U.S. at 678. While Seri's Complaint does plead facts "merely consistent" with CrossCountry's liability, "it stops short of the line between possibility and plausibility." *Id.* This is insufficient to survive a motion to dismiss. At this, point, there is little more than speculation supporting CrossCountry's involvement with any calls.

### B. 47 U.S.C. § 227(c) ("Protection of subscriber privacy rights")

Section 227(c)(5) provides that "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may bring an action for injunctive relief, damages, or both. 47 C.F.R. § 64.1200(c) is a regulation promulgated under § 227(c) and provides, "[n]o person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry . . . . " *See also Wagner v. CLC Resorts & Developments, Inc.*, 32 F. Supp. 3d 1193, 1197 (M.D. Fla. 2014) (quoting 47 U.S.C. § 227(c)(5)) ("To state a claim under section 227(c)(5) of the TCPA, a plaintiff must allege (1) receipt of more than one telephone call within any 12-month period (2) by or on behalf of the same entity (3) in violation of the regulations promulgated by the FCC.").

Without engaging in a second analysis, the Court simply notes only that, for the same reasons discussed above, Seri has failed to allege that CrossCountry "initiat[ed]" any telephone

-11-

solicitations to him or that alleged offending calls we made "by or on behalf of" CrossCountry.

Therefore, Seri has failed to properly plead that CrossCountry has violated § 227(c).

### C. Amendment

Seri requests leave to amend "after an appropriate period of discovery." Resp. 4. CrossCountry has not sought dismissal with prejudice, and, regardless, it is certainly not clear to the Court that amendment would necessarily be futile. *See* Fed. R. Civ. P. 15(a)(2); *Newberry v. Silverman*, 789 F.3d 636, 645 (6th Cir. 2015). Therefore, Seri may file an amended complaint against CrossCountry should appropriate, relevant facts later be revealed.

## IV. Failure to Serve Direct Source

"If a defendant is not served within 90 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m).

Here, the Complaint was filed on May 19, 2016, and Summons for both Defendants was issued on May 20. Thus, service was due by August 17. CrossCountry appeared on June 28. However, Direct Source has not appeared nor has proof of service or a waiver been filed.

Accordingly, Seri shall within ten days file proof of service or otherwise show good cause for its failure to do so, or else Direct Source will be dismissed without prejudice, pursuant to Federal Rule of Civil Procedure 4(m).

## V. Conclusion

For the reasons discussed above, Motion to Dismiss, Doc #: 4, is GRANTED. Defendant

CrossCountry Mortgage, Inc. is DISMISSED WITHOUT PREJUDICE. Furthermore, Plaintiff

Christopher Seri must, by October 10, 2016, SHOW CAUSE why Defendant Michael Crawford

d/b/a Direct Source should not be dismissed for failure to serve.

      IT IS SO ORDERED.

*/s/ Dan A. Polster    Sept. 28, 2016*
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**